DECISION
{¶ 1} Relator, Clint Staton, commenced this original action requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation, and ordering the commission to grant said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C), and Loc.R. 12(M), of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In that decision, the magistrate noted that the plain language of R.C. 4123.09 is permissive. It does not require the commission to permit the taking of depositions. Furthermore, where doctors or vocational experts reach different opinions based upon the same objective evidence, the commission does not abuse its discretion by denying a motion to depose. Here, the magistrate determined that Dr. Thomas O. Hoover, relying upon Dr. Jennifer Stoeckel's objective test result, simply reached a different conclusion. Under these circumstances, the commission did not abuse its discretion in denying the motion to depose. The magistrate also determined that relator did not timely raise the issue with respect to the deposition of Dr. LeRoy Shouse.
 {¶ 3} Lastly, the magistrate determined that the jobs identified by Dr. Hoover were not outside relator's physical capacities. Therefore, the magistrate concluded that the commission did not abuse its discretion in denying relator's application for PTD compensation.
 {¶ 4} Relator filed objections to the magistrate's decision, essentially rearguing those matters addressed in the magistrate's decision. For the reasons set forth in the magistrate's decision, the objections are overruled.
 {¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law to those facts. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; Writ of mandamus denied.
BOWMAN and WATSON, JJ., concur.
 IN MANDAMUS {¶ 6} Relator, Clint Staton, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability compensation ("PTD") compensation, and ordering the commission to find that relator is entitled to the requested compensation.
Findings of Fact:
 {¶ 7} 1. Relator sustained a work-related injury on April 18, 1988, and his claim has been allowed for: "Cervical sprain; herniated cervical disc."
 {¶ 8} 2. On June 21, 1999, relator filed an application for PTD compensation. At the time, relator was 58 years of age, had completed the tenth grade, was able to read, write, and perform basic math, although not well, had not received his GED, and had a work history including fire watch, cleanup, and mechanical work. Relator's application also indicated that he had been a business owner of a gas station for a number of years.
 {¶ 9} 3. In support of his application, relator attached the June 3, 1999 report of his treating physician Dr. Thomas S. Berger. In his report, Dr. Berger noted that, in April 1989, relator underwent an anterior cervical diskectomy and fusion at C5-C6. Post-operatively, there was improvement; however, relator continued to experience pain radiating down his neck and down his right upper extremity. Dr. Berger noted further that relator had undergone extensive rehabilitation and that he had been able to perform some part-time employment. Dr. Berger concluded as follows: "Based on the patient's age, education and our inability to rehabilitate him into any gainful employment, I believe that he is entitled to permanent and total disability benefits."
 {¶ 10} 4. Relator was also examined by Dr. LeRoy Shouse, who issued a report dated November 15, 1999. Dr. Shouse concluded that relator had reached maximum medical improvement, assessed a 21 percent whole person impairment, concluded that relator could not perform any of his former positions of employment at this time as he would not be able to do any effective lifting, moving about, or any function as a mechanic to a large truck. With regard to whether relator could perform any sustained remunerative work activity, Dr. Shouse stated as follows:
 {¶ 11} "This is of very doubtful because this gentleman has essentially tenth grade education. He does not read or write very well, by his admission, I don't believe that he will function adequately in a heavy labor market for which he is qualified."
 {¶ 12} 5. Dr. Shouse completed an occupational activity assessment wherein he indicated that relator could sit, stand, and walk each for eight hours a day; lift or carry up to 20 pounds with his right hand for three hours a day, and lift or carry up to 20 pounds with his left hand for up to eight hours per day; lift or carry 20 to 50 pounds with his left hand for up to three hours per day; push, pull, or otherwise move up to 20 pounds for three hours per day with his right hand and up to 20 pounds for eight hours a day with his left hand and up to 50 pounds for five hours a day with his left hand. Relator was unrestricted in his ability to climb stairs and ladders and use foot controls as well as in reaching at waist and knee level; relator could frequently crouch, stoop, bend, and kneel as well as reach at floor level; relator could occasionally handle objects with his right hand and was unrestricted in his ability to handle objects with his left hand; and relator was precluded from reaching overhead.
 {¶ 13} 6. In an addendum, dated December 15, 1999, Dr. Shouse indicated that relator would be able to perform some sustained remunerative employment within the limits outlined in the occupational activity assessment.
 {¶ 14} 7. Relator filed a motion to depose Dr. Shouse without indicating any specific disparity between his report and the report of Dr. Berger. This motion was never addressed by the commission.
 {¶ 15} 8. Relator submitted the January 31, 2000 report of Jennifer J. Stoeckel, Ph.D. Dr. Stoeckel noted as follows in her report:
 {¶ 16} "* * * Mr. Staton has only a limited ninth grade education and demonstrates low average intellectual functioning, significant academic deficits (reading 4th grade; spelling 3rd grade; arithmetic 6th grade) and predominantly below-average vocational aptitudes. In fact, the only strength demonstrated was in Mechanical Reasoning which was suitable for his prior employment, but would not be of great assistance to him assuming these restrictions.
 {¶ 17} "Summarily, within reasonable vocational certainty, Mr. Staton would be considered permanently and totally disabled on the basis of his work injuries, residual impairment and limitations, age of fifty-eight years, limited education and below-average academic, intellectual and vocational functioning as noted per formal testing. While many of Mr. Staton's prior employment would be considered skilled in nature, his skills would not necessarily transfer within the restrictions reported by Dr. Shouse if those are accepted."
 {¶ 18} Given relator's age of 58, Dr. Stoeckel noted that rehabilitation was not recommended and that, in her opinion, relator would remain permanently and totally disabled in the foreseeable future.
 {¶ 19} 9. The record also contains a January 4, 2000 employability report prepared by Thomas O. Hoover, Ph.D. Based upon the reports of Dr. Shouse, Dr. Hoover opined that there were occupations for which relator was presently employable without any skills development or any academic remediation. Those jobs include the following: "order clerk, food beverage, sorter, charter, call-out operator, pari[-]mutuel-ticket checker, document preparer microfilm, addresser." Following academic remedia-tion to the seventh to eighth grade level, which would involve some academic training and actual on-the-job training in view of relator's limited formal education and limited relevant past work experiences, Dr. Hoover identified the following additional jobs which relator could perform within the physical restrictions of Dr. Shouse: "identification clerk, referral clerk, temp help, credit card clerk, timekeeper, animal shelter clerk, food checker, telephone operator, telephone answer serv oper, dispatcher, maintenance ser."
 {¶ 20} 10. On April 8, 2000, Dr. Hoover prepared an addendum to his original report. Dr. Hoover was asked to assume that relator is actually functioning at the grade levels indicated in the testing performed by Dr. Stoeckel, address how the level of tested functioning would effect relator's ability to meet basic demands of entry-level occupation, and address whether the levels of functioning indicated by Dr. Stoeckel's tests are consistent with relator's background data. Dr. Hoover indicated that, if relator was actually functioning at the limited academic and intellectual levels that Dr. Stoeckel's testing indicated, he would not have been able to function as an auto mechanic, diesel mechanic, or small business owner, as he had in the past. Dr. Hoover noted that there was no history of brain damage nor were there any other reasons to suggest cognitive losses to explain the difference between relator's past history and his present measurements. Dr. Hoover noted further that, even at the low academic levels measured by Dr. Stoeckel, relator could perform the simple rote tasks which were provided in his original report. Dr. Hoover noted further that typically, actual successful work history is a more reliable measure of one's abilities and unless there is some reason to suggest deterioration, such as a brain injury or other central nervous system deterioration which are not part of the allowed conditions, relator should be able to understand the previous work tasks, even though he may not be able to physically perform them. Such a conclusion indicates that relator should be able to understand even simple work tasks, such as those noted in Dr. Hoover's original assessment.
 {¶ 21} 11. Relator filed a motion seeking to depose Dr. Hoover. Relator provided the following reasons for his request:
 {¶ 22} "The injured worker submits that there is a substantial disparity between the reports of Dr. Jennifer Stoeckel and that of Dr. Thomas Hoover. The injured worker further submits that the Commission vocational expert has failed to consider the physical impairments and restrictions of the right upper extremity as noted by the Industrial Commission specialist. * * *"
 {¶ 23} 12. Relator's motion to depose Dr. Hoover was denied by order of the commission dated May 18, 2000. The staff hearing officer ("SHO") provided the following reasons for denying the motion:
 {¶ 24} "Following review of the claim file and all relevant evidence, it is the finding of the Staff Hearing Officer that the claimant's motion is unreasonable because there is just a difference of opinion between vocational experts, Dr. Hoover and Dr. Stoeckel. The Staff Hearing Officer finds that Dr. Hoover, in his addendum report dated 4/8/2000, did consider the educational testing done by Dr. Stoeckel. The Staff Hearing Officer finds this difference of opinion can be resolved thru adjudication process. Therefore, it is the order of the Staff Hearing Officer that the claimant's motion is denied. The processing of all pending issues is to resume.
 {¶ 25} "This order is based on reports of Dr. Hoover, Dr. Stoeckel, and State ex rel Louis Kamp [State ex rel. Kamp v. Indus. Comm. (June 19, 1997), Franklin App. No. 96APD10-1317]."
 {¶ 26} 13. On June 14, 2000, relator's PTD application was heard before an SHO and resulted in an order denying that compensation. The commission relied upon the medical report of Dr. Shouse and concluded that relator was capable of performing sedentary employment and light-duty employment within the capabilities and limitations set forth in the medical report and occupational activity assessment form completed by Dr. Shouse. The commission then noted the findings of both vocational experts, Drs. Stoeckel and Hoover, and concluded as follows:
 {¶ 27} "The Staff Hearing Officer finds that the claimant is 58 years old, has a tenth grade education, and work experience as a clean up and fire watch person for a construction company, business owner of a garage, diesel mechanic, truck driver, gas station owner and automobile mechanic. The Staff Hearing Officer finds that the claimant's age is a neutral factor which would not be a barrier that would prevent the claimant from adapting to new work rules, processes, methods, procedures and tools of a new occupation. The Staff Hearing Officer further finds that the claimant's age would not prevent him from participating in a structured rehabilitation program aimed at skill enhancement.
 {¶ 28} "The Staff Hearing Officer further finds that the claimant's formal level of education does not reflect his actual academic functioning, as reported by Dr. Stoeckel. The Staff Hearing Officer finds that the claimant reads at a 4th grade equivalent, spells at a 3rd grade equivalent and performs arithmetic at a 6th grade equivalent. While the claimant's academic functioning is not an asset in overall employability, the Staff Hearing Officer finds that the claimant is nevertheless able to access entry level unskilled occupations. The Staff Hearing Officer further finds that the claimant would be capable of participating in programs aimed at acquiring skills and learning new skills through on-the-job training. The claimant was a business owner for a period of twelve years where he owned his own garage. Prior to that he was employed as a gas station owner for a period of 3 years. The Staff Hearing Officer finds that the claimant demonstrated the ability to successfully perform occupations which exceeded his academic abilities and which were performed at or above entry levels.
 {¶ 29} "Considering the claimant's age, education, academic functioning, and work experience, the Staff Hearing Officer finds that the claimant is able to perform the occupations identified in the vocational report of Dr. Hoover, such as: food and beverage order clerk, sorter, charter, call-out operator, peri-mutual [sic] ticket checker, document preparer of microfilm, and addresser.
 {¶ 30} "Accordingly, the Staff Hearing Officer finds that the claimant is able to perform sustained, remunerative employment.
 {¶ 31} "This order is based on the medical report of Dr. Shouse and the vocational report of Dr. Hoover."
 {¶ 32} 14. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 34} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 35} Relator contends that the commission abused its discretion by denying his application for PTD compensation for the following reasons: (1) the commission should have permitted him to depose Dr. Hoover; (2) the commission abused its discretion by failing to rule on his motion to depose Dr. Shouse; and (3) all of the jobs identified by Dr. Hoover as jobs which relator could actually perform are outside of relator's physical limitations according to the Dictionary of Occupational Titles. For the reasons that follow, this magistrate concludes that relator's arguments lack merit.
 {¶ 36} R.C. 4123.09 provides, in pertinent part, as follows:
 {¶ 37} "In claims filed before the industrial commission * * *, the commission and bureau may cause depositions of witnesses residing within or without the state to be taken in the manner prescribed by law for the taking of depositions in civil actions in the court of common pleas."
 {¶ 38} R.C. 4123.09 confers upon the commission and the bureau the authority to cause depositions to be taken. The plain language of R.C.4123.09 is permissive; it states that the commission may cause depositions, not that it shall cause them in any particular context. Moreover, the Ohio Supreme Court has concluded that, in light of R.C.4123.09, it is the commission's responsibility to formulate the procedure to be followed with regard to motions to depose witnesses in connection with workers' compensation claims. See LTV Steel Co. v. Indus. Comm. (2000), 140 Ohio App.3d 680. As the court stated in State ex rel. General Motors v. Indus. Comm. (1976), 47 Ohio St.2d 244, 251, "R.C. 4123.09
vests the Industrial Commission with authority to allow the taking of depositions. It does not require the commission to do so."
 {¶ 39} Ohio Adm. Code 4121-3-09(A)(6) outlines the procedure for obtaining the oral deposition of, or submission of interrogatories to, an industrial commission or bureau physician and includes the list of factors that a hearing administrator shall consider when determining the reasonableness of the request. Ohio Adm. Code 4121-3-09(A)(6)(d) states:
 {¶ 40} "The factors to be considered by the hearing administrator when determining the reasonableness of the request for deposition and interrogatories include whether a substantial disparity exists between various medical reports on the issue that is under contest, whether one medical report was relied upon to the exclusion of others, and whether the request is for harassment or delay. If the request is made by an employer the hearing administrator shall also determine whether the relied-upon medical report(s) considered non-allowed conditions."
 {¶ 41} Relator filed a motion seeking to depose Dr. Hoover and the matter was heard before an SHO who denied the motion after determining that there was not a substantial disparity between the reports of Dr. Hoover and Dr. Stoeckel. The SHO concluded that relator's motion was unreasonable because there is just a difference of opinion between the vocational experts. Because, in his addendum report dated April 8, 2000, Dr. Hoover considered and accepted the educational testing performed by Dr. Stoeckel, the SHO concluded that any difference of opinion can best be resolved through the adjudication process.
 {¶ 42} This magistrate finds that the commission's decision to deny relator's application to depose Dr. Hoover does not constitute an abuse of discretion. As stated previously, Dr. Hoover accepted Dr. Stoeckel's objective testing results and then rendered his opinion. Dr. Hoover concluded that those results were not consistent with relator's prior ability to perform his former positions of employment and that the testing results would not preclude relator from performing entry-level work. As such, having accepted Dr. Stoeckel's objective testing results, Dr. Hoover simply reached a different opinion regarding relator's ability to perform some sustained remunerative employment. A difference of ultimate opinion does not constitute the type of substantial disparity which would cause the commission to grant an application to depose a witness. Instead, where the doctors or vocational experts reach different opinions based upon the same objective evidence, the commission does not abuse its discretion by denying a motion to depose.
 {¶ 43} Relator also asserts that the commission abused its discretion when the commission failed to process his motion to depose Dr. Shouse. Although the commission should have ruled on relator's motion, this magistrate finds that the commission's failure to do so does not constitute grounds for issuing a writ of mandamus.
 {¶ 44} First, relator's motion gave no reasons for why the commission should find a substantial disparity except to say that one existed. As such, relator did not set out any reasons upon which the commission could find such a disparity. Second, Dr. Berger's report provides no objective evidence. Dr. Berger merely indicated that relator had pain radiating down his right upper extremity and that, based upon relator's age, education and Dr. Berger's inability to rehabilitate him, relator was entitled to PTD benefits. Dr. Shouse noted relator's pain, his range of motion, his grip strength, and his level of impairment. Even Dr. Shouse opined that it was doubtful that relator could perform sustained remunerative activity. Dr. Shouse then completed an occupational activity assessment. There is no disparity at all between the reports and, to the extent that Dr. Shouse actually completed an occupational activity assessment while Dr. Berger did not, there is nothing to compare. Third, relator could have brought this matter to the commission's attention but failed to do so. In State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, the Ohio Supreme Court noted that reviewing courts do not have to consider an error which the complaining party could have called, but did not call, to the lower court's attention at a time when such error could have been avoided or corrected. The court refused to permit a party from raising an issue for the first time in a mandamus proceeding in the court of appeals when the argument had not been raised before the commission. For these reasons, relator's argument fails.
 {¶ 45} Relator also contends that the jobs identified by Dr. Hoover and the commission as jobs which relator could perform are not within the physical restrictions listed by Dr. Shouse. As indicated previously, Dr. Shouse indicated that relator could lift or carry up to 20 pounds with his right hand for up to three hours per day and could lift or carry up to 20 pounds with his left hand for up to eight hours per day as well as lift or carry between 20 and 50 pounds with his left hand for up to three hours per day. In assessing relator's ability to push, pull, or otherwise move objects, Dr. Shouse noted that relator could push, pull, or otherwise move between ten and 20 pounds for up to three hours per day with his right hand and up to eight hours per day with his left hand. Furthermore, Dr. Shouse noted that relator could push, pull, or otherwise move between 20 and 50 pounds for five hours a day with his left hand.
 {¶ 46} In his brief, relator simply identifies each job listed by Dr. Hoover and the commission and then notes the job duties as provided by the Dictionary of Occupational Titles. Relator then concludes that the requirements of each of these jobs appear to be beyond the capabilities of relator based upon the impairments noted by Dr. Shouse in regard to relator's right upper extremity. This magistrate disagrees. Without listing all of the jobs, this magistrate will simply note a few. Relator indicates that the job of "sorter" requires that relator sort data, such as forms, correspondence, checks, receipts, bills, and sales tickets, into a group for purposes of filing, mailing, copying, or preparing records. Likewise, the job of "order clerk" would require relator to take food and beverage orders, record orders on a ticket, distribute order tickets and to collect charge vouchers and cash for services and keep records of those transactions. The job of "addresser" would require relator to address, by hand or typewriter, envelopes, cards, advertising literature, packages and similar items for mailing and may also require relator to sort mail. Relator contends that these jobs, as well as the others, appear to be beyond the limitations provided by Dr. Shouse with regard to relator's impairments to his upper right extremity. All of the above-cited jobs require relator to lift, push, pull, and otherwise move a negligible amount of weight and, as such, this magistrate simply cannot see how those jobs are outside of relator's physical capabilities. Inasmuch as relator is capable of performing light-duty work, the majority of the jobs listed are predominately sedentary in nature. Relator simply does not provide any explanation as to how those job duties fall outside of the physical restrictions and this magistrate does not find that they do.
 {¶ 47} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.